IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSIE BADGER, individually and on behalf of all others similarly situated,<br>　　　　　Plaintiff, | )<br>)<br>)<br>) | |
| vs | ) | Civil Action No. 16-1431 |
| PREIT ASSOCIATES, LP,<br>　　　　　Defendant. | )<br>)<br>) | Magistrate Judge Mitchell |

I.　　Recommendation

It is respectfully recommended that the motion to dismiss filed on behalf of the defendant (ECF No. 8) be denied.

II.　　Report

Plaintiff, Josie Badger, brings this action individually and on behalf of all others similarly situated against Defendant, PREIT Associates, LP (PREIT), alleging violations of Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181 to 12189 (ADA). Specifically, she alleges that the facilities at PREIT are not fully accessible to and independently usable by individuals who use wheelchairs for mobility, as she does, because of various barriers in the parking lots and along the paths of travel. She also challenges Defendant's corporate policies and practices, which she contends allow access barriers to recur at Defendant's facilities even after they have been remediated.

Presently before the Court is Defendant's motion to dismiss the Complaint on the grounds that Plaintiff has not identified actionable ADA violations, that she lacks standing to bring this case because she has not visited and has no plans to visit four of the five locations cited in the Complaint and that even the one location she did visit is not near her home. In the alternative, Defendant moves to limit discovery to the single issue of PREIT's corporate policies

regarding ADA compliance. For the reasons that follow, the motion should be denied.

Facts

Plaintiff states that she is a resident of the Commonwealth of Pennsylvania who has a mobility disability and is limited in the major life activity of walking, causing her to be dependent upon a wheelchair for mobility. (Compl. ¶¶ 2, 20.)[1] She has visited Defendant's property located at Beaver Valley Mall in Pennsylvania (the "Subject Property"). During this visit, she experienced unnecessary difficulty and risk due to excessive slopes in Defendant's parking facilities and improper signage. She states that her ability to access and safely use the facility was significantly impeded. (Compl. ¶¶ 23-24.) Plaintiff lives north of Pittsburgh in the Ellwood City/Wampum area and travels throughout the region frequently. She indicates that she has been to this facility within the last year and intends to return, including to see if the facility remains in violation of the ADA, but that she will be deterred from returning to and fully and safely accessing the facilities so long as they remain non-compliant and so long as Defendant continues to employ the same policies and practices that have led and in the future will lead to inaccessibility at its facilities. (Compl. ¶¶ 25-27.)

She also indicates that, on her behalf, investigators examined this location and four other retail PREIT locations in Pennsylvania and found the following violations: 1) the surfaces of one or more purportedly accessible parking spaces had slopes exceeding, 2.1%; 2) the surfaces of one or more access aisles had slopes exceeding 2.1%; 3) one or more signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking area; 4) a curb ramp located on the route to the building entrance had a running slope exceeding 8.3%; and 5) a curb ramp along the route to the entrance had a flare with a slope exceeding 10.0%.

---

[1] ECF No. 1.

(Compl. ¶ 33.)

Procedural History

Plaintiff filed this action on September 16, 2016. Federal question jurisdiction is based on the ADA claim, 28 U.S.C. § 1331; 42 U.S.C. § 12188(a). She alleges that the cited violations constitute "a failure to remove architectural barriers" in violation of 42 U.S.C. § 12182(b)(2)(A)(iv) and a failure to alter, design or construct accessible facilities after the effective date of the ADA so that they are readily accessible to and usable by individuals who use wheelchairs, in violation of § 12183(a)(1) and the appropriate regulations, which will deter her and similarly situated individuals from returning to Defendant's facilities. She indicates that, without injunctive relief, she will be unable to fully access Defendant's facilities in violation of her rights under the ADA. (Compl. ¶¶ 46-49, 56.)

She also brings this action on behalf of all others similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. (Compl. ¶¶ 38-43.) See seeks a declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA and its implementing regulations; a permanent injunction directing Defendant to take all steps necessary to remove the architectural barriers and bring its facilities into ADA compliance, to change its corporate policies and practices to prevent the reoccurrence of access barriers post-remediation and to monitor its facilities to ensure that the injunctive relief remains in place; an order certifying the class she proposes and naming her as class representative and appointing her counsel as class counsel; payment of costs of suit; payment of reasonable attorney's fees; and any other relief the Court deems just, equitable and appropriate. (Compl. at 12.)

On October 24, 2016, Defendant filed a motion to dismiss (ECF No. 8). On November 16, 2014, Plaintiff filed a brief in opposition (ECF No. 12). On November 23, 2016, Defendant

filed a reply brief (ECF No. 13).[2]

Defendant argues that: 1) Plaintiff fails to cite an ADA violation at the only location she actually visited; 2) Plaintiff lacks standing to raise claims as to locations she is unlikely to visit and even the one location she did visit is not near her home; and 3) her class allegations do not give her standing.

Plaintiff responds that: 1) she has demonstrated standing with respect to the Subject Property under both the intent to return theory and the deterrent effect test based upon the barriers she has encountered at the Subject Property that impede her safe access thereto; 2) the scope of her claims should be determined by application of Rule 23 and she does not have to visit every PREIT location to establish standing; 3) she has sufficiently alleged that Defendant has violated the ADA and its implementing regulations, and she alleged the existence of centralized policies and practices that indicate PREIT is unable to maintain accessibility.

In its reply brief, Defendant argues that: 1) Plaintiff still fails to allege an ADA violation based upon Chapter 2 of the ADA Standards; 2) she has not stated a claim regarding other, unnamed PREIT locations by merely citing four locations and then implying the existence of some centralized "policy"; 3) Plaintiff ignore PREIT's standing argument and has not established an intent to return to the Beaver Valley Mall or other locations; and 4) Plaintiff does not have individual standing to challenged alleged locations she has not visited.

Standing

"A motion to dismiss for want to standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). The Court of Appeals has explained that:

---

[2] On December 5, 2016, Defendant filed a Motion for Oral Argument (ECF No. 14). The Court does not believe that oral argument would be of assistance in this matter.

In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: "Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." Ballentine, 486 F.3d at 810 (citing Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). The Supreme Court most recently explained this standard in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009): "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955)….

"A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). With respect to 12(b)(1) motions in particular, "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007).

In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243-44 (3d Cir. 2012).

The Supreme Court has held that:

In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The standing requirement is born partly of "'an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting Vander Jagt v. O'Neill, 699 F.2d 1166, 1178–1179 (C.A.D.C. 1982) (Bork, J., concurring)).

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). The Court has explained that:

In Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the

5

defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc., 528 U.S. 167, 180-81 (2000). However, the manner in which standing must be supported depends upon the stage of the litigation at which the issue is raised: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Defenders of Wildlife, 504 U.S. at 561 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

ADA Title III

Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128 (2005). Specifically, it requires "places of public accommodation" to "remove architectural barriers … in existing facilities … where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and to "design and construct facilities for first occupancy [no] later than 30 months after July 26, 1990 that are readily accessible to and usable by individuals with disabilities," § 12183(a). Plaintiff alleges that PREIT is engaged in the ownership, management and development of properties, including shopping malls, and that it is a "place of public accommodation," § 12181(7) (Compl. ¶¶ 22, 30), and PREIT does not deny these allegations. Failure to meet the requirements cited above constitutes a violation of the ADA which may be enforced by individuals bringing suit for injunctive relief in federal court, § 12188(a).

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citation omitted). See 42 U.S.C. § 12188(a) (providing that the

6

remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only).

Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations. Plaintiffs seeking prospective injunctive relief must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact" requirement of standing. Anderson, 943 F. Supp. 2d at 538 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

Intent to Return Theory

Defendant cites the Anderson case, which held that:

> In Title III ADA [c]ases in which disabled plaintiffs bring suit seeking an injunction to cure discriminatory practices, courts generally look to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore whether the threat of injury is concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiffs past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." "The four-factor test is one of totality, and a finding in favor of [the plaintiff] does not require alignment of all four factors."

Anderson, 943 F. Supp. 2d at 539 (quoting Harty v. Burlington Coat Factory of Pa., L.L.C., 2011 WL 2415169, at *4, 7 (E.D. Pa. June 16, 2011)). Defendant acknowledges that the four-factor test is not controlling law in the Third Circuit, but nevertheless relies on the factors to contend that a plaintiff who lives more than 100 miles away from a location must provide a plausible explanation that she will return to it, and that if she has only visited a location one time, the

7

likelihood of future harm is further undermined. (ECF No. 9 at 15.)

As Defendant notes, this four-factor test has not been adopted by the Third Circuit, but it has been cited by many district courts.[3] See Garner v. VIST Bank, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013) (citing cases). But see Klaus v. Jonestown Bank & Trust Co. of Jonestown, 2013 WL 4079946, at *7 (M.D. Pa. Aug. 13, 2013) (describing four-part test as "rigid" and "unendorsed" by the Third Circuit, but finding that blind plaintiff who challenged ATMs met it anyway).

It is further noted that no court of appeals has adopted the four-factor test. The Court of Appeals for the Eleventh Circuit observed that a district court had applied the four-factor test, but stated that these factors are "not exclusive and that no single factor is dispositive. District courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1327, 1337 n.6 (11th Cir. 2013); see also Daniels v. Arcade, L.P., 477 F. App'x 125, 129 (4th Cir. 2012) (declining to adopt the four-factor test, which the court described as having "overly and unnecessarily complicate[d] the issue at hand."); D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1037-38 (9th Cir. 2008) (finding intent to return based on regularity of visits and stated intent but not proximity). Some courts have stated that the four-factor test is more appropriate to apply at the summary judgment stage, not on a motion to dismiss. See Brown v. Showboat Atlantic Propco, LLC, 2009 WL 690625, at*2 (D.N.J. Mar. 11, 2009); Wilson v. PFS LLC, 2006 WL 3841517, at *4 (S.D. Cal. Nov. 2, 2006).

Courts that have not adopted the four-factor test have cited the following three considerations regarding an intent to return for purposes of standing: 1) the plaintiff alleges past

---

[3] This Court's research has not found any case from the Third Circuit discussing the issue of standing in an ADA Title III action.

injury under the ADA (encountering some kind of barrier); 2) it is reasonable to infer from the complaint that the discriminatory treatment will continue; and 3) it is reasonable to infer from the complaint that, based on the plaintiff's past frequency of visits and the proximity of the defendant's place of business to the plaintiff's home, the plaintiff intends to return to this location in the future. Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (legally blind patron who frequently visited restaurants near her home and did not receive "effective communication" of their menu options had standing to pursue claim). See also Chapman v. Pier 1 Imports, 631 F.3d 939, 948 (9th Cir. 2011); Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 62-63 (1st Cir. 2005).

The location at issue need not be near the plaintiff's home if she alleges a reason to return to the location. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002) (plaintiff who traveled weekly to city 70 miles from where he lived to visit his grandmother and encountered architectural barriers at grocery store had standing to sue); D'Lil, 538 F.3d at 1037 (disabled plaintiff who expressed intent to return to Santa Barbara area—as she frequently did for both business and pleasure—and stay at Best Western Encina if barriers were removed established standing); Houston, 733 F.3d at 1340 (plaintiff who lived in next county but traveled frequently 30.5 miles to supermarket near his lawyer's office and encountered architectural barriers had standing); Kreisler v. Second Ave. Dining Corp., 731 F.3d 184, 188 (2d Cir. 2013) (standing requirements met when "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [place of public accommodation] to plaintiff's home, that plaintiff intended to return to the subject location."); Camarillo, 518 F.3d at 158 (legally blind patron who alleged that she repeatedly was rebuffed when she asked to have menus read to her had standing to sue based on past experience, reasonable inference that it

would continue and reasonable inference that she would return); Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211-12 (10th Cir. 2014) ("CCDC") (plaintiff who submitted affidavit stating that she intended to return to store with barriers at least six times per year had standing to sue).

The Deterrent Effect Test

More recently, a number of courts have rejected the "intent to return" test for standing in ADA Title III cases in favor of a "deterrent effect test." Under this theory, a disabled individual suffers a cognizable injury if he is deterred from visiting a non-compliant public accommodation because he has encountered barriers to his disability there. Chapman, 631 F.3d at 950.

The deterrent effect test relies on the statement in the ADA that: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subsection does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). See Kreisler, 731 F.3d at 188 (disabled plaintiff in wheelchair saw inaccessible entrance to diner and did not have to attempt to overcome it prior to bringing suit); Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1037-38 (9th Cir. 2008) (plaintiff showed "intent to return" to store 550 miles from home once barriers were removed, thus really a deterrent effect case); Ferries Del Caribe, 405 F.3d at 64-65 & n.7 (wheelchair user did not have to engage in the futile and indeed hazardous gesture of attempting to board ferry that had no accessible ramps or bathrooms to establish a cognizable injury); Frame v. City of Arlington, 657 F.3d 215, 235-36 & n.104 (5th Cir. 2011) (en banc) (in a Title II case, wheelchair users did not have to limit their claims to noncompliant sidewalks they had actually tried to use).

It is true that, even under the deterrent effect test, the plaintiff must still assert an intent to return to the particular place or places where the violations are alleged to be occurring and thus a

10

plaintiff does not have standing at all of a defendant's facilities scattered over a vast area that she would not realistically visit. See Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074-75 (7th Cir. 2013) (plaintiff who lived in Illinois but who was injured by spring-closing bathroom door of hotel in Overland Park, Kansas, and who expressed an intent to return for a relative's wedding had standing with respect to that hotel, but not the 56 other Courtyard Marriott hotels that used the same spring-hinged door closers).

However, when a plaintiff has presented a class action complaint, the issue of standing is limited to the plaintiff's individual standing, not whether the plaintiff can challenge policies as they relate to a multitude of locations. Rather, that is an issue of class certification. As the Tenth Circuit has observed:

> Abercrombie insists that our standing analysis does not end at the Park Meadows Mall. It argues that Ms. Farrar lacks standing to bring a claim for nationwide injunctive relief because she does not intend to visit every Hollister store with a porch—over 230 stores nationwide. We have no doubt that if Ms. Farrar were seeking a nationwide injunction in her own right, then she would lack standing to challenge accessibility barriers at stores she never intends to visit. Although the concepts of standing and adequacy of status to maintain a class action appear related, they are independent criteria and must be evaluated separately. See Hassine v. Jeffes, 846 F.2d 169, 175-76 (3d Cir. 1988). The question whether an injunction may properly extend to Hollister stores nationwide is answered by asking whether Ms. Farrar may serve as a representative of a class that seeks such relief. All that is necessary to answer this question is an application of Rule 23.

CCDC, 765 F.3d at 1212-13 (footnote and some citations omitted). See also Garner, 2013 WL 6731903, at *9 (plaintiff satisfied standing requirements with respect to the ATM he used and the challenges to the remaining ATMs represented an issue of class certification, not standing).

Defendant objects to this line of reasoning, which has previously been applied by this Court, as well as the Tenth Circuit and other district courts as cited above. However, Defendant does not cite to any authority holding to the contrary. Rather, it argues based on a series of analogies: Blum v. Yaretsky, 457 U.S. 991, 999-1000 (1982) (Medicaid recipient nursing home

patients who challenged one kind of procedure used to lower the level of care they received did not have standing regarding decisions made to raise the level of care, even if some unnamed class members had suffered this injury); Lieberson v. Johnson & Johnson Consumer Cos., 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (named plaintiff only had standing with respect to two of four baby bath products that he actually purchased to challenge them as deceptively labeled). But see Glenn v. Hyndai Motor America, 2016 WL 3621280, at *15-16 (C.D. Calif. June 24, 2016) (rejecting Lieberson and other cases in light of Gratz v. Bollinger, 539 U.S. 244 (2003), and concluding that a named plaintiff could assert class claims regarding vehicle models she had not purchased if she adequately pleaded "sufficient similarity" between the models purchased and those not purchased).[4] These analogies are not persuasive in light of the many courts that have actually issued rulings on the question at issue, namely, whether a plaintiff has standing to maintain a class action as to ADA violations at locations she has not personally visited or whether this is an issue of class certification.

The Court concludes that Plaintiff has satisfied the requirements of standing, both under the intent to return test and under the deterrent effect test. She has encountered architectural barriers at the Subject Property and she has expressed an intent to return there even though the barriers remain.

With respect to other locations cited in the Complaint, Plaintiff does not have to visit them to establish standing. Rather, that is an issue of class certification, which is not before the Court at this time. Defendant relies on the Anderson case, but no class action was asserted therein and thus the plaintiff had to show actual injury at each named store. That is not the

---

[4] As Plaintiff notes, this analogy is extremely strained in that it requires each location of a PREIT facility to be deemed a separate "product" that Plaintiff must visit ("purchase") to establish standing. Plaintiff responds that, even accepting this bizarre analogy, the only "product" in this case consists of Defendant's inaccessible parking facilities and routes.

12

situation in this case. Therefore, with respect to the issue of standing, the motion to dismiss should be denied.

Rule 12(b)(6) Standard

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

13

Failure to State a Claim for ADA Violations

Defendant argues that Plaintiff has failed to state a claim even with respect to the one PREIT location she visited. Specifically, it contends that the ADA Standards regarding "parking spaces" indicate that, where parking spaces are provided, they must meet the standards of section 208 of the 2010 ADA Accessibility Guidelines,[5] which has only two requirements: 1) the facility must provide a minimum number of "accessible" parking spaces (as defined in Section 502), § 208.2; and 2) the location of these spaces must be on the shortest accessible route, § 208.3. Defendant argues that Plaintiff has not alleged how many parking spaces are provided at each facility or how many are accessible or non-accessible. Therefore, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff responds that the 2010 ADA Standards require much more than the two sections cited by Defendant, including the following: 1) slopes of accessible parking spaces and access aisles shall not be steeper than 1:48 (i.e., 2.1%), § 502.4; 2) ramps shall have running slopes not steeper than 1:12 (i.e., 8.3%), § 405.2; 3) curb ramp flares shall not be steeper than 1:10 (i.e., 10.0%), § 406.3; and 4) parking space identification signs shall be a minimum of 60 inches above the ground surface measured to the bottom of the sign, § 502.6. She has alleged that all of these requirements were violated at Defendant's facilities.

Defendant replies that all of the sections Plaintiff cites merely define what constitutes "accessible" as that term is used in section 208. Chapter 4 describes technical requirements for accessible routes and Chapter 5 describes technical requirements for parking spaces. Thus, Defendant contends that, for example, if a parking space does not meet the sloping requirements in § 502.4, then it simply does not count as one of a facility's "accessible" parking spaces, but

---

[5] The 2010 Standards appear in 36 C.F.R. pt. 119, App. B, C, D.

14

this does not create an independent source of liability if the facility otherwise has the requisite minimum number of accessible parking spaces located along the shortest accessible route to the facility.

Defendant's only support for its argument is the case of <u>McCune v. Party City Corp.</u>, 2016 WL 1056811, at *6 (E.D. Calif. Mar. 17, 2016), in which the court, on a motion for summary judgment, dismissed a claim about the lack of a sign for an accessible parking space when the plaintiff did not dispute that the parking space described in the complaint had been decommissioned as an accessible space before he parked in it, and therefore the sign requirement did not apply. Defendant has not explained how this conclusion applies to a motion to dismiss, based upon a complaint that does not (and need not) identify the specific parking space alleged to be non-compliant because the sign was mounted less than 60 inches above the finished surface of the parking area. The clear import of Plaintiff's allegation is that this parking space is intended to be and is in fact accessible, but that the sign is improperly mounted, which is a violation of the regulation. The case is factually and legally distinguishable from the <u>McCune</u> case.

Moreover, Defendant's argument is seriously flawed to the extent that it is contending that, for example, a parking space intended to be and marked as accessible but which has too steep a slope does not constitute a violation of the ADA because somewhere else in the parking lot is another space that meets the slope requirement (and the total number of such other spaces and their distance to the facility all meet the regulations). Defendant offers no support for this crabbed reading of the ADA and its regulations. An individual with a mobility disorder who fell in a parking space that was marked accessible but had an excessive slope would hardly be consoled by the knowledge that, on the whole, the parking lot had the minimum number of accessible spaces.

Defendant also seeks to dismiss all references to a PREIT facility at "5125 Johnstown Road" in Harrisburg, Pennsylvania, which it asserts is "an unidentified, non-PREIT facility located at what appears to be a fictitious address based on a public domain search." (ECF No. 9 at 5 n.1.) Plaintiff responds that this was a typographical error and the address in question is PREIT's mall in Harrisburg, located at "5125 Jonestown Road." (ECF No. 12 at 2 n.2.) In its reply brief, Defendant contends that it "sold that facility years ago and is not responsible for it." (ECF No. 13 at 1.) The Court could not resolve this dispute in the context of a motion to dismiss even if Defendant had submitted evidence in support of its argument, which it has not done.[6] Therefore, with respect to Defendant's motion to dismiss for failure to state a claim, the motion should be denied.

Limitation of Discovery

In the alternative, Defendant moves to limit discovery to the purported existence of a centralized policy, practice and procedure concerning alleged ADA non-compliance in PREIT's parking facilities. Defendant contends that limiting discovery to this single issue will allow the Court to resolve it, either through a motion for summary judgment or a motion for class certification, potentially resolving every aspect of the case except Plaintiff's individual claim related to the Beaver Valley Mall.

Plaintiff responds that the conditions of the parking facilities at Defendant's various locations demonstrate the existence of a centralized corporate ADA compliance policy that has led to widespread slope violations in the purportedly accessible parking areas. Plaintiff contends that discovery should not be limited, but should allow for inspection of parking facilities at all of

---

[6] Defendant contends that "a simple public records search of Pennsylvania's property records reveals that PREIT sold its property at this location almost four years ago on January 2, 2013." (ECF No. 13 at 7.) However, Defendant has not attached the results of a public records search and it is not this Court's responsibility to investigate the matter.

Defendant's locations.

Defendant cites no authority in support of its argument that discovery in this case should be limited to its centralized, corporate policies but should not extend to inspections of its various facilities, which, if deficient, would reflect the inadequate corporate policies. Defendant has not demonstrated that limiting discovery in this way would be helpful to the resolution of this case. Therefore, the motion to limit discovery should be denied.

For all the reasons cited above, it is recommended that the motion to dismiss filed by Defendant (ECF No. 8) be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by January 17, 2017. Any party opposing the objections shall file a response by January 31, 2017. Failure to file timely objections will waive the right of appeal.

s/Robert C. Mitchell_____<br>
ROBERT C. MITCHELL<br>
United States Magistrate Judge

Date: January 3, 2017